## Case No. 6,787.

### In re HOWES et al.

[7 Ben. 102; [1] 9 N. B. R. 423.]

District Court, S. D. New York. Jan., 1874.

SURRENDER TO REGISTER — SEIZURE BY MARSHAL —ISSUING WARRANT.

1. A petition in involuntary bankruptcy was filed on December 6th, 1873, on which an order to show cause was issued, returnable December 13th. On that day the bankrupts appeared by attorney, and the matter was adjourned to the 20th, on which day an adjudication of bankruptcy for want of an answer was made. The warrant was not issued to the marshal till January 3d, 1874. On the 22d of December, the bankrupts, by a formal instrument in writing, surrendered to the register all of their property, and requested him to take possession of it, which he did. On receiving the warrant, the marshal applied to the register to deliver up the property in his possession, which he refused to do. The marshal thereupon applied to the court for an order directing the register to deliver up the property: Held, that the register must deliver up the property to the marshal.

2. In cases of involuntary bankruptcy, the warrant to the marshal should be issued forthwith upon the adjudication.

[Cited in Re Tifft, Case No. 14,031.]

3. There is no such thing as a surrender of property by a bankrupt to the register, in a case of involuntary bankruptcy.

[In bankruptcy. In the matter of Reuben W. Howes and Charles A. Macy.]

James C. Carter, for the motion.
Lucien Birdseye, opposed.

BLATCHFORD, District Judge. On the 6th of December, 1873, a petition in involuntary bankruptcy was filed against the bankrupts, on which an order to show cause was issued, returnable on the 13th. On that day the bankrupts appeared by attorney, and the matter was adjourned to the 20th. On the 20th an adjudication of bankruptcy for want of answer after appearance was made. The warrant was issued and put into the hands of the marshal on the 3d of January, 1874. It designates the 24th of January as the day for the first meeting of creditors. On receiving the warrant the marshal ascertained that a large part of the estate of the bankrupts was in the possession of the register to whom the case was referred by the order of adjudication. The marshal demanded of the register the surrender of the same to him, and the register refused to surrender it

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

to the marshal, claiming that it had been surrendered to him by the bankrupts after the adjudication and before the warrant was issued, and that he had a right to retain it until an assignee should be appointed, to whom he could and would transfer it. The marshal now applies to the court for an order directing the register to deliver the property forthwith to the marshal, to be held by him under the warrant. On the part of the register it is shown that the bankrupts, after their adjudication as such, by a formal instrument in writing, signed by them, surrendered to the said register all of their property, except exempt property, and requested the said register to take possession of the same. This instrument is dated December 20th, but was executed December 22d. It was made with the assent of the petitioning creditor, and after consultation with the register. Prior to making it, the bankrupts, who had not opposed the adjudication, had made preparations to apply to the court for an order respecting their property, which consisted largely of moneys on deposit in trust companies, on interest, and in a bank. Money was being paid in on debts for which collateral securities were held by the bankrupts, and in respect of which action was necessary. Suits were pending against the bankrupts, and likely soon to go to judgment and be in a condition to be enforced against the property of the bankrupts. The schedules to be prepared on the part of the bankrupts would be voluminous, complicated, and difficult to prepare, and would require much time for their completion. These considerations induced the bankrupts to make, and the register to accept, the surrender. Thereupon the register took the property into his possession and custody. The schedules have been completed, and show about 1,100 different creditors. They were not completed until the day the warrant was issued. It is represented that because of the number of the creditors and the difficulty of preparing the schedules, the time for the first meeting of creditors could not until then be fixed. It is also stated that after the surrender the state sheriff claimed to seize the property, and was prevented from doing so, by the fact that the register had possession of it. It is also stated that the bankrupts were preparing a petition and schedules to go into voluntary bankruptcy when the involuntary proceedings were commenced, but that such intention was unknown to the petitioning creditor, and his intention to file his petition was unknown to the bankrupts.

I have no hesitation in holding that the order applied for by the marshal must be made. By the 42d section of the act [of 1867 (14 Stat. 537)] the court is required, on an adjudication in involuntary bankruptcy, to forthwith issue a warrant to take possession of the estate of the debtor. The form of the warrant is prescribed by form No. 59. That form is, by general order No. 32, re-

quired to be observed and used. It requires the marshal to take possession of all the estate, real and personal, of the bankrupt, except such as may be by law exempt from the operation of the act, and of all his deeds, books of account and papers, and to keep the same safely until the appointment of an assignee. This is the form of the warrant issued in this case. General order No. 13 makes it the duty of the marshal, as messenger, to take possession of the property of the bankrupt, and to prepare, within three days from the time of taking such possession, a complete inventory of all the property, and to return it as soon as completed, subject to the power of the court to enlarge the time for making the inventory and return. It also requires the marshal, in case the bankrupt is absent or cannot be found, to prepare a schedule of the names and residences of his creditors, and the amount due to each, from the books or other papers of the bankrupt that may be seized by him under the warrant, and from any other sources of information.

These positive provisions of the statute, and of the general orders, constitute an entire scheme of procedure. The possession of the property, in a case of involuntary bankruptcy, is given to the marshal, as messenger, eo nomine, not merely for safe custody, but with a view to the performance of certain duties. In a case of voluntary bankruptcy, the debtor files his petition, which must be accompanied by schedules containing an inventory of his property and a list of his creditors. and a surrender of the property to the register is for nothing but custody. In a case of involuntary bankruptcy, the marshal is required to make an inventory of the property seized, and return such inventory to the court, and, if the bankrupt cannot be found, so as to make a schedule of his creditors, the marshal is required to make such schedule, and to make it from the books and papers which he has seized under the warrant. No power is given to any other officer to make the inventory or the schedule of creditors. If the bankrupt does not, as required by the order of adjudication, form No. 58, make and transmit to the marshal, as messenger, a verified schedule of his creditors, the schedule of creditors so to be made by the marshal, under general order No. 13, from the books and papers of the bankrupt seized under the warrant, is the schedule, and the only schedule, which can be used in serving notices under the warrant for the first meeting of creditors. Unless the marshal makes the seizure of the books and papers he cannot make the schedule. Unless he makes the schedule he cannot execute so much of the warrant as requires the notices to creditors to be given by him, or make return of its execution; and, if the notices are not duly given (section 12), there can be no election of an assignee. The warrant for the seizure of all the property is as authorita-

tive as the warrant for the seizure of the books and papers. There is no provision for the making of any inventory of property or schedule of creditors by the register. If the register has the books and papers, the marshal cannot perform his duty of making a schedule of creditors. There is no provision for using, in giving notices to creditors, a schedule of creditors made by the register, or for putting on the files of the court, for the use of creditors, any inventory of property, except one made by the marshal. The court has no discretion to vary this mode of procedure, or to substitute the register for the marshal as the officer to act.

Moreover, the marshal, from the moment the warrant is delivered to him, becomes responsible to the creditors for the performance of the commands of the warrant. One of them is, to seize all the property of the bankrupt. The fact that it is in the possession of the register does not relieve the marshal from his responsibility, if the property is not properly in the possession of the register, and if he has no authority of law for holding it.

It is urged, that the provision of section 4 of the act, that the register shall have power, and it shall be his duty, "to receive the surrender of any bankrupt," and the provision of general order No. 5, that the register to whom the case is referred may perform the acts which he is empowered to do by the act, and conduct proceedings in relation to, among other matters, when uncontested, "receiving the surrender of a bankrupt," authorized the register in this case to do what he did. But, in view of the provisions referred to in regard to the proceedings in a case of involuntary bankruptcy, it is evident that such is not the proper construction of the provisions of section 4 and general order No. 5. They must be limited in their scope so as to be consistent with, and not conflict with, the provisions in regard to involuntary bankruptcy. There is no such thing as a surrender in involuntary bankruptcy. There is a seizure of property. In voluntary bankruptcy, the petition (section 11) is required to state that the debtor is willing to surrender all his estate and effects for the benefit of his creditors, and, with a view to such surrender, he is required (section 11) to annex to his petition an accurate inventory of his estate, describing it and stating where it is. The filing of this petition is declared (section 11) to be an act of bankruptcy, and he is eo instanti, in contemplation of the act, adjudged a bankrupt. He brings his estate into court with him, when he files his petition, and surrenders it to the court, and puts it under the protection of the court. It is this surrender which the register, as the designated officer of the court for the purpose, is empowered to receive. When, therefore, the act gives authority to the proper register to receive the surrender of any bankrupt, or, as it is expressed in general order No. 5, to receive the surrender of a bankrupt, it only means, the surrender of a bankrupt who is authorized by the act to make a surrender. The theory of the involuntary part of the act is opposition, resistance, proceedings against the will of the debtor. If the debtor is adjudged a bankrupt on an involuntary petition, it can make no difference whether he is so adjudicated by default, or for want of answer after appearance, or after the trial of an issue. Such an adjudication, even though uncontested, does not make him a voluntary bankrupt, or give him the privilege of making, or the register the power of accepting, the surrender which only a voluntary bankrupt can make. Nor can it make any difference that, after an uncontested adjudication in an involuntary case, the bankrupt desires to make a surrender. The machinery of an involuntary case having been set in motion, the case must proceed as an involuntary case.

The suggestion is made that, the register being an officer of the court, his possession of the property is the possession of it by the court, and that it is not for one officer of the court to take property which is in the custody of another officer of the court. The answer is, that the statute and the general orders designate the register as the custodian in cases of voluntary bankruptcy, and the marshal as the custodian in cases of involuntary bankruptcy.

If the duty of the register, under section 4 of the act, to receive the surrender of any bankrupt, requires him to receive the surrender of any involuntary bankrupt who desires to make a surrender, such bankrupt might as properly surrender his property to the register after the marshal had seized it as before, and the register might claim to take it out of the hands of the marshal.

But, in the view that the surrender is only one which is to be made before the marshal has seized the property, it is urged that cases of exigency may arise where, after adjudication and before the marshal can seize under the warrant, or even before the warrant can be issued and reach the marshal, it may be very important and indispensable that the register, as a recognized officer of the court, should take possession of the property; that, in practice, the warrant cannot issue until the day for the first meeting of creditors can be fixed; and that that cannot be fixed until the list of creditors is made out, showing where the creditors reside, so that a day sufficiently distant to admit of notice being given to distant creditors, may be fixed. There is no force in these suggestions. The 42d section provides that, on an adjudication in an involuntary case, the court shall forthwith issue a warrant to take possession of the estate of the debtor. The warrant is to issue instantly, to take possession of the property. A day for the first meeting of creditors can be named in

it, although the schedule of creditors has not been prepared. That day (section 11) must be not less than ten, nor more than ninety days after the issuing of the warrant. By the warrant the marshal is required to publish a general notice of the first meeting, as well as to serve a special notice thereof on each creditor whose name shall be set down in the proper schedule of creditors. If, on the day named, the notice required to be published has been properly published, but the notices required to be served have not been served, because of the failure to prepare the proper schedule of creditors in time to allow a proper length of notice to be served, the proper course is to adjourn the meeting to a day certain, and to direct the giving for the adjourned day of a new notice in respect of the serving of notices, but not in respect of the publication. In re Schepeler [Case No. 12,452]. The warrant and the seizure under it remain in force. There is, therefore, never any propriety in delaying, after adjudication, the issuing of the warrant in an involuntary case. On the contrary, it ought to be, and can be, issued forthwith, as the statute requires, so that the property of the bankrupt may under it be forthwith taken possession of by the marshal, as the messenger of the court. In this way the rights of all parties interested will be preserved, and the action of the court and its proper officer will be prompt and efficient, and there will be no occasion for a resort to unauthorized proceedings.

The register and all parties concerned have acted herein not only in good faith and with a view to what seemed to be the best interests of the estate, but they had not, so far as I am aware, any express decision, as a guide or precedent. An order must be entered, directing the register to deliver the property to the marshal.